FILED
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

2015 MAY 15  PM 12: 08

NANCY WONG

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

                    PLAINTIFF

VERIFIED COMPLAINT

-AGAINST-

# CV 15 - 2815

POLICE OFFICER ALEXANDER DELGIORNO
(shield 6759), OFFICER MELE (1st Pct),
CITY OF NEW YORK, YING HONG WANG
(Individually and as Employee New York
State Insurance Fund),
ALYCE SIEGEL (Director Human Resources
New York State Insurance Fund), ERIC MADOFF
(Executive Director and CEO New York State
Insurance Fund), and JOSEPH MULLIN
(Director of Administration New York State
Insurance Fund)

DATE PURCHASED:
JURY DEMAND

# VITALIANO, J.

## MANN. M.J.

Plaintiff, Nancy Wong, through her attorney Tamara M. Harris, Esq,. hereby

complains and alleges as follows:

### THE PARTIES

1.    Plaintiff, Nancy Wong resides in Marlboro, New Jersey.

2.    Defendants Officer Mele and Officer Alexander Delgiorno are New York

      City Police Officers who, at all relevant times, worked out of the First

      Precinct located at 16 Ericsson Place, New York, New York 10013.

3.    The City of New York maintains a principal business address of 100

      Church Street, New York New York.

4.    Defendant Ying Hong Wang resided, at all relevant times, in Queens New

      York, and maintains a principal place of business at New York State

      Insurance Fund, 199 Church Street, New York New York.

5.   Defendants Alyce Siegel, Eric Madoff, and Joseph Mullin maintain a principal place of business at New York State Insurance Fund, 199 Church Street, New York New York.

## JURISDICTION AND VENUE

6.   This is an action arising under the laws of the State of New York. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. Section 1331, there being a federal question; and under 28 U.S.C. Section 1332, there being diversity of citizenship and an amount in controversy exceeding $75,000. Venue is proper in this district under 28 U.S.C. Section 1391(b).

## FIRST CAUSE OF ACTION- UNLAWFUL SEIZURE OF PLAINTIFF BY OFFICERS DELGIORNO AND MELE IN VIOLATION OF PLAINTIFF'S FOURTH, FOURTEENTH, AND EIGHTH AMENDMENT RIGHTS, PROTECTED UNDER 42 U.S.C.S SECTION 1983

7.   On May 16, 2014 plaintiff Nancy Wong was visiting her husband at his place of employment, New York State Insurance Fund, located at 199 Church Street, New York, New York.

8.   New York State Insurance Fund is a state entity, and all of those in its employ are state employees.

9.   Ying Hong Wang worked in the Claims Department at New York State Insurance Fund and was a state employee at all relevant times.

10.  On May 16, 2014 Ying Hong Wang was at work, at her scheduled time, when she and plaintiff Nancy Wong entered an elevator at New York State Insurance Fund.

11.  Plaintiff Nancy Wong was 61 years old on May 16, 2014, and suffered from Type II Diabetes, Hypertension and high cholesterol.

12.  Plaintiff retrieved a cup of water at New York State Insurance Fund in preparation for taking her Diabetes medication, Metformin and her high blood pressure (hypertension) medication, Micardis.

13.  Inside of the elevator at 199 Church Street, Ying Hong Wang viciously attacked Nancy Wong by clawing at plaintiff's eyes with her fingernails and ripping plaintiff's cornea; biting plaintiff's finger- ultimately, causing plaintiff's nail to separate from her finger; biting plaintiff about her body-causing plaintiff to become infected with Hepatitis B; scratching plaintiff's eyes, face, neck, arms, and ear- causing plaintiff's face, ear, eyes and body to bleed; shoved, pushed, and pulled plaintiff and yanked at plaintiff's hair.

14.  There was a video camera in the elevator at New York State Insurance Fund in plain view, which captured this attack and recorded it.

15.  An employee of New York State Insurance Fund watched the attack on plaintiff once the elevator doors opened and did nothing to stop his fellow employee, Ying Hong Wang, from assaulting the plaintiff.

16.  Police Officer Alexander Delgiorno (shield # 6759) and Officer Mele, of the 1st Precinct responded to the location.

17. These officers spoke to Ying Hong Wang, who lied and told them that plaintiff had initiated the attack by scratching Ying Hong Wang's face, and dragging her around by her hair- allegedly causing Ying Hong Wang's hair to rip out of her head. Wang claimed that plaintiff was the sole attacker.

18. The physical appearance of plaintiff Nancy Wong belied the story told by Ying Hong Wang- since it was plaintiff who showed all signs of being scratched about her face, eyes, ear, arms, and body, Plaintiff's cornea was visibly scratched and torn, and her eyeball was filling with blood. It was plaintiff who had bite wound on her body and finger- which ultimately caused her nail to fall off. Additionally, it was plaintiff who was infected with Hepatitis B as a result of all the bite wounds Ying Hong Wang caused plaintiff to sustain.

19. No reasonable officer in his right mind, looking at plaintiff's physical appearance and the wounds on her face and body, would believe she was the one who scratched and attacked Wang.

20. Despite all the visible evidence that plaintiff was the victim, and not Ying Hong Wang, the police disregarded plaintiff's version of events, and accepted defendant's Ying Hong Wang's incredible story about how she was the one scratched and dragged by the 61 year old plaintiff.

21. The police also refused to look at the video footage of the incident, despite the fact that a camera was in plain view in the elevator where this attack took place; and despite the fact plaintiff told the officer to look at

the video footage from the camera- since it would prove plaintiff was the victim and not the assailant.

22. Despite plaintiff's pleas, Officers Delgiorno and Mele refused to look at the video footage, which was exculpatory evidence in plaintiff's favor.

23. Without any probable cause to do so, Officers Delgiorno and Mele placed plaintiff under arrest and transported her to the First Precinct.

24. Upon being handcuffed and transported to the First Precinct, plaintiff informed defendant officers, Mele and Delgiorno, that she had Type II Diabetes and high blood pressure and needed to take her medication.

25. Defendants Mele and Delgiorno refused to give plaintiff her necessary diabetes medication (Metformin) and high blood pressure medication (Micardis).

26. Plaintiff was placed in a holding cell for hours with no food or water, and began to become symptomatic without her necessary medication and without any food or water.

27. It was crucial for plaintiff, with Type 2 Diabetes, to be properly hydrated and to eat, and to receive her necessary medication, lest she become symptomatic. Despite plaintiff's pleas for water, food and her medication-defendant officer refused to give her any of the three.

28. Plaintiffs husband appeared at the First Precinct and spoke to Officer Delgiorno directly, imploring him to give plaintiff her medication and showing him proof that plaintiff was a diabetic with high blood pressure-who needed her pills.

29. Delgiorno advised plaintiff's husband, who brought plaintiff's hypertension, diabetes and cholesterol medicine to the precinct, that plaintiff was not permitted to take her medication.

30. Plaintiff remained in a jail cell at the First Precinct for approximately nine hours without food, water, or her necessary medication, before she was finally transported to Central Booking.

31. While in custody at the First Precinct, during those approximately nine hours, plaintiff begged to be taken to a hospital. She informed Officers Mele that she was dizzy and sick from not eating or drinking and from having her medicines withheld; she had blood filling up her eye from her torn cornea; her clothes were bloody from the attack; and she had visible scratch marks and bite wounds on her body.

32. Plaintiff repeatedly expressed her need to be taken to the hospital for medical attention and defendants Delgiorno and Mele intentionally and maliciously refused to get her medical treatment while she was in their custody.

33. It was not until plaintiff was transferred from the custody of Police Officers Delgiorno and Mele, and into the custody of New York City Department of Corrections at Central booking, that she finally received some medical attention.

34. The officers working for the Department of Corrections, at Central Booking, immediately noticed the severity of plaintiff's physical

condition; to wit, her blood filled eye, bloody clothes, bite wounds, scratch marks, and the blood pouring from her inner ear.

35. After being deprived medical attention for 9 hours while in the custody of Police Officers Delgiorno and Mele, plaintiff was immediately taken to Bellevue Hospital by New York City Corrections.

36. After being taken to the hospital, and receiving some treatment for her wounds and potential bacterial infection stemming from those wounds, plaintiff was returned to Central Booking for arraignment.

37. Plaintiff was not arraigned for approximately 24 hours after being taken into custody by Officers Delgiorno and Mele, at which point her eye was getting progressively worse.

38. On or about May 19, 2014 plaintiff was given the first available appointment with the ophthalmologist, at which point she had surgery on her eye to repair the torn cornea and had several stitches remained on her eyeball post-surgery.

39. Plaintiff has suffered deteriorating vision as a result of this injury to her eye, and the delay caused by Officers Delgiorno and Mele in getting her treatment. Whereas plaintiff would have been able to have surgery on her eye on Friday May 16, 2014, had defendant officers not unlawfully arrested her; she had to wait until Monday May 19, 2015 for eye surgery, because of defendant officers unlawful and protracted detention of her.

40. Defendants Delgiorno and Mele were members of the New York City Police Department when they effectuated the seizure of plaintiff on May 16, 2014.

41. Defendants Delgiorno and Mele were state actors acting under the color of state law, and their actions were violative of plaintiff's Fourth and Fourteenth amendment rights against unreasonable seizures and restraints on liberty.

42. The conduct of defendants Delgiorno and Mele violated a clearly established statutory right; to wit, 42 USCS Section 1983; and clearly established constitutional rights; to wit, the Fourth and Fourteenth Amendments of the United States Constitution.

43. The conduct of these defendant officers was objectively unreasonable and a reasonable officer would have known that it was unlawful to arrest plaintiff, where there was exculpatory video evidence showing Ying Hong Wang took the first blow and inflicted injuries upon plaintiff; where plaintiff's physical injury was readily apparent and visible to the responding officers; and where plaintiff told the officers to view the video tape from the elevator because it would prove Ying Hong Wang was the assailant.

44. It was sadistic, abusive and unreasonable for the officers to refuse to give plaintiff her necessary Diabetes and Hypertension medication during her 9 hours in custody.

45. It was sadistic, abusive, and unreasonable for the officers to refuse to give plaintiff medical attention and take her to a hospital during the 9 hours she was in their custody at the First Precinct and during transport to Central Booking- while her eyeball was filling blood and all her other scratch wounds and bite marks were visible to defendants.

46. It was sadistic, abusive and unreasonable for defendants officers to deny plaintiff food and water for over nine hours when she was diabetic with high blood pressure, and expressed to them the need for her to have food or water for her condition.

47. Plaintiff's entire confinement by defendant officers, and their treatment of her while in custody (including deprivation for food, water, medicine, and hospitalization) were all sadistic, abusive, inhumane, and unreasonable, and constituted cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

48. The deprivation of medical treatment to plaintiff; medication to plaintiff; and food and water to plaintiff, were all objectively and sufficiently serious deprivations.

49. Defendant officers acted with malicious, intentional and deliberate indifference to plaintiff's health and safety by intentionally denying and delaying her receipt of food, water, medicine, and medical care.

50. There is no law enforcement officer who would find this conduct objectively reasonable, as it relates to both plaintiff's detention and treatment while in custody.

51. The law prohibiting state actors from effectuating unreasonable seizures without probable cause and from engaging in cruel and unusual punishment are laws defined with reasonable clarity; they are also recognized rights by the Supreme Court of the United States and Second Circuit; and a reasonable defendant would have understood from existing case law that his conduct was unlawful.

52. Plaintiff was injured in that she suffered severe pain, anguish, stress and physical injury as a result of defendants' intentional and malicious action.

53. Plaintiff is seeking $20 million dollars in emotional damages; $20 million punitive damages; and $100,000 compensatory damages for legal fees, past and future medical expenses; and loss of earning capacity.

## SECOND CAUSE OF ACTION-ASSAULT AND BATTERY BY YING HONG WANG

54. Plaintiff repeats and realleges all of the aforementioned allegations.

55. Ying Hong Wang intentionally placed plaintiff in fear of imminent harmful of offensive contact.

56. Defendant Ying Hong Wong engaged in physical conduct which placed plaintiff in imminent apprehension of harmful contact.

57. Ying Hong Wang's attack of plaintiff- by beating, biting, shoving, scratching and pulling her hair- constituted an intentional wrongful physical contact with plaintiff, without plaintiff's consent.

58. Plaintiff seeks $20 million dollars in emotional damages for this cause of action; 20 million dollars in punitive damages for this cause of action; and

$100,000 in compensatory damages for legal fees and costs and past and future medical treatment and lost earnings past and future.

## THIRD CAUSE OF ACTION- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST YING WANG HONG, OFFICER DELGIORNO AND OFFICER MELE

59.   Plaintiff repeats and realleges all of the aforementioned allegations.

60.   Defendant Ying Hong Wang engaged in extreme and outrageous conduct when she bit plaintiff's finger and body and infected plaintiff with Hepatitis B; clawed at plaintiff's eyeball with her fingernail- ripping plaintiff's cornea; clawed at plaintiff's face, body, ears and eyes with her nails; and shoved, pushed, pulled and yanked plaintiff and plaintiff's hair; and bit plaintiff's finger- causing plaintiff's entire nail to come off.

61.   Defendant Ying Hong Wang intended to cause, or disregarded a substantial probability of causing, severe emotional distress to plaintiff-who was injured as a result of this attack; required eye surgery; and was infected with Hepatitis B as a result of Wang's actions.

62.   Ying Hong Wang was a direct cause of plaintiff's emotional distress, and did cause plaintiff to suffer severe emotional distress and anguish-especially since plaintiff has been infected with Hepatitis B; lost her fingernail from defendant Wang's bite wound, and has suffered continuing deterioration in her vision from Wang's clawing at plaintiff's cornea.

63. Defendant Wang's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

64. Defendants Delgiorno and Mele engaged in extreme and outrageous conduct by arresting plaintiff without any probable cause that she had committed a crime; and by depriving plaintiff of food, water, medication and treatment- despite seeing the extent of her injuries, and despite her telling them she needed her diabetes and hypertension medications and needed to be taken to a hospital.

65. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to plaintiff- who suffered these deprivations for over 9 hours before New York City Department of Corrections sent her to the hospital; and she remained in custody as a result of her unlawful seizure for roughly 24 hours.

66. Plaintiff suffered severe emotional distress as a result of defendant Delgiorno and Mele's conduct and these defendant officers were the cause of plaintiff's severe emotional distress- stemming from her unlawful arrest; deprivation of food, water and necessary medications; and denial of medical treatment for nine hours while plaintiff pleaded with defendants for all of the aforementioned things.

67. Defendant officers' actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

68. Plaintiff seeks, from each respective defendant, $20 million dollars in emotional damages for this cause of action; 20 million dollars in punitive damages for this cause of action; and $100,000 in compensatory damages for legal fees and costs and past and future medical treatment and lost earning capacity.

**YING HONG WANG, A STATE ACTOR, COMMITTED MALICIOUS ABUSE OF PROCESS AND VIOLATED PLAINTIFF'S OF 14TH AMENDMENT DUE PROCESS RIGHTS, UNDER 42 USCS SECTION 1983; AND STATE ACTORS ERIC MADOFF, ALYCE SIEGEL, JOSEPH MULLIN AIDED AND ABETTED YING HONG WANG IN COMMITTING MALICIOUS ABUSE OF PROCESS AND VIOLATIONS OF PLAINTIFF'S 14TH AMENDMENT DUE PROCESS RIGHTS UNDER 42 USCS SECTION 1983.**

69. Plaintiff repeats and realleges all of the aforementioned allegations.

70. Defendant Ying Hong Wang was employed by New York State Insurance Fund, which is a state run organization.

71. Defendant Wang was a state actor acting under color of state law.

72. On May 16, 2014 she viciously attacked plaintiff in an elevator at New York State Insurance fund, while in the scope of her employment and while she was on the clock.

73. Defendant Wang's assault of plaintiff was objectively unreasonable and unjustified.

74. After biting, clawing, shoving and pulling on plaintiff, Wang lied to responding police officers and blamed plaintiff for the attack.

75. Wang lied to these officers while in the scope of her employment and while on the clock, by making a false report about a workplace violence incident which she, herself, initiated.

76. Wang requested the police arrest plaintiff for allegedly attacking her- even though the reverse was true.

77. Based on Wang's malicious and intentional misrepresentations to the officers, plaintiff was arrested and prosecuted for two counts of assault, attempted assault and harassment in the second degree. Accordingly, defendant Wang employed regularly issued legal process to compel the police to perform an act; to wit, to arrest plaintiff so that she could be brought before a criminal tribunal for prosecution.

78. Wang successfully caused plaintiff to be arrested and prosecuted based on her misrepresentations to the police.

79. Wang caused the police to arrest plaintiff and bring her to the criminal court for arraignment and prosecution with the intent to do harm to plaintiff and without excuse of justification. Wang did this in order to obtain a collateral objective that is outside the legitimate ends of process; to wit, to conceal her own criminal conduct by casting blame on her victim- the plaintiff.

80. Defendant Wang's conduct constitutes malicious abuse of process by a state actor and is a procedural due process violation under the 14th Amendment of the United States Constitution, which forbids the use of legal process for a wrongful purpose.

81. Wang caused plaintiff to be deprived of her liberty, by falsely telling police that plaintiff had committed a criminal assault by scratching Wang and dragging Wang by her hair. In doing so, defendant Wang committed a procedural due process violation by causing plaintiff to be deprived of her liberty via Wang's distortion and corruption of the processes of law.

82. After plaintiff was arrested Alyce Siegel (Director of Human Resources at New York State Insurance Fund), Joseph Mullin (Director of Human Resources New York State Insurance Fund) and Eric Madoff (Executive Director and CEO of New York State Insurance Fund) all aligned themselves with Ying Hong Wang, by condoning her actions and deeming her the victim of an assault that she actually perpetrated.

83. Defendants Siegel, Madoff, and Mullins aligned themselves with defendant Wang, despite knowing of the existence of, and possessing video footage which proved Wang was the assailant on May 16, 2014.

84. Despite this video footage, defendants Siegel, Madoff and Mullins forced plaintiff's husband to resign (or be fired) from his position at New York State Insurance Fund, where he had worked without incident for over 9 years- on the grounds that he had allowed plaintiff to commit a crime on the property of New York State Insurance Fund.

85. Thereafter, all of the above defendants delayed in producing the video footage of this incident to the New York District Attorneys Office, prolonging plaintiff's prosecution, and in an attempt to cover up the actions of Ying Hong Wang. By way of this delay defendant committed

malicious abuse of process and procedural due process violations with respect to plaintiff's 14th amendment right under the US Constitution.

86. Defendants Siegel, Madoff and Mullins and Wang intentionally compelled the continuation of legal process with the intent to harm plaintiff and without justification, and in order to obtain a collateral objective that was outside the legitimate ends of process; to wit, to conceal a state employees misconduct and avoid liability by misplacing blame on plaintiff. These defendants all allowed an unjustified criminal prosecution of plaintiff to continue for a wrongful purpose and via a distortion and corruption of the processes of law.

87. Defendants Siegel, Madoff and Mullins terminated the employment of plaintiff's husband, claiming plaintiff committed a crime at the workplace, and never took any disciplinary or corrective measures against Wang- the true assailant.

88. They failed to take any remedial measures, despite knowing that Wang committed the criminal act and not plaintiff.

89. This was objectively unreasonable conduct by the aforementioned defendants, and their conduct violated clearly recognized statutory and constitutional rights.

90. As a result of defendant Wang, Siegel, Madoff, and Mullins' malicious and intentional conduct plaintiff suffered severe emotional anguish, physical injury, disease, and will need continuing medical treatment for the trauma to her eye and body.

91.   Plaintiff seeks $20 million dollars in emotional damages for this cause of action against each respective defendant; 20 million dollars in punitive damages for this cause of action against each respective defendant; and $100,000 in compensatory damages for legal fees and costs and past and future medical treatment and lost earnings capacity.

92.   Plaintiff demands trial by jury.

Dated: May 12, 2015
        New York, NY

Tamara Harris
The Law Office of Tamara M. Harris
111 Broadway, Ste 706
New York, New York 10006
(212) 334- 1050

VERIFICATION

Nancy Wong, deposes and swears under penalty of perjury that she has read the
foregoing verified complaint and that the same is true to the best of her knowledge.

_____
NANCY WONG

Sworn to before me this
_13_ day of May 2015

_____
NOTARY PUBLIC

ELLEN H COHEN
ID # 2393508
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires February 22, 2020